Scribner, J.
The policy sued upon in the court below was issued July 22, 1886. The loss occurred August 3, 1889.
The by-laws of the company, which formed a part of the policy, contained the following provision: “This comjiany will not be liable under and by virtue of any policy issued by it. * * * if the assured shall procure or suffer to accrue any incumbrance covering the property therein specified or any part thereof. * * * In each and every such case the insurance thereunder is void, and immediately ceases and determines.”
After the issuing of the policy in question, the assured executed and delivered to Farnam & Co. its two promissory notes with cognovits attached, in the usual form. One of these notes was for $700, dated March 1, 1887, and payable ninety days after date. The other was for $846.67, dated January 10, 1888, payable in six months after date.
Judgment was rendered upon these notes, in the Court of Common Pleas of Williams County, by virtue of the cognovits forming a part thereof, July 9, 1889. And these judgments, thereupon became liens upon a portion at least, of the property covered by the policy of insurance.
Upon the trial in the court below, the jury were instructed that the judgments so obtained were not “incumbrances” within the meaning of the language of the by-laws above quoted. Exception was taken to this ruling, and the only ques *446 tion now presented is as to the correctness of the instruction so given.
1. The view taken by the court of common pleas is, directly supported by the decisions of the Court of Appeals of New York in the following cases : Bailey v. The Homestead Fire Ins. Co., 80 N. Y. 211; Green v. The Homestead Fire Ins. Co., 82 N. Y. 517. To the same effect is the case of Chamberlin v. The Ins. Co. of N. America, 3 N. Y. Supplement, 701. The Supreme Court of Indiana has made a like ruling. Phœnix Ins. Co. v. Piekel, 119 Ind. 155.
Cases holding or appearing to hold a different doctrine are cited by, counsel for plaintiff in error. The following are the leading authorities relied upon: Egan v. The Mut. Ins. Co., 6 Denio, 326. In that case the application contained a stipulation- “ that if the assured should suffer a judgment which should be a lien upon the insured premises without communicating it to the insurers,” the policy should be void. It was held that a violation of this stipulation avoided the policy. This ruling was approved in the case in the 80th N. Y., above referred to, the court there holding, however, that the term “ incumbrance ” contained in a policy of insurance, “ does not apply to incumbrances by judgment or otherwise in invitum, by operation of law.” Of course, where by the express terms of the contract, the attaching of a judgment lien is to annul the policy, the court must, in the absence of statutory regulation to the contrary, give effect to the stipulation.
In Brown v. The Ins. Co., 41 Pa. St. 187, the policy contained this condition: “Should there, during the life of the policy, an incumbrance fall or be exhibited upon the property insured, sufficient to reduce the real interest of the. insured in the same to a sum only equal to or below the amount insured, and the assured shall neglect or fail to obtain consent of the company thereto, then and in that case the policy shall be void.”
The trial court, among other things, found: “ The records of the court show that after (the date of the policj1-) and before *447 the fire, judgments to a considerable amount were recovered against both the plaintiffs, and to a very large amount additional against one of them. It is not pretended that any notice of either was given to the company.”
The Supreme Court held, that upon notice of the liens, “the company would have the right to rescind the policy on repayment of a proportionate part of the premium and that, upon the facts as above found, the parties insured were not entitled to recover.
In the case of Insurance Company v. Berger, 42 Pa. St. 285, the following proposition was determined : “ A clause in a policy of insurance that it should cease at and from -the time the property hereby insured shall be levied on or taken into possession or custody, under any proceeding at law or equity, is to be construed as meaning an actual levy and change of possession under it; a mere notice of levy by the officer charged therewith to the defendants, at their store, without his taking the goods insured into possession or custody, though good as a levy, will not defeat the policy.” In the case of Insurance Co. v. Gottsman, 48 Pa. St. 151, it was held that “ the stipulation in an insurance policy requiring the person whose property is insured to give notice to the insurance company of an incumbrance or levy made upon the property insured, is a substantive and material part of the contract ; ” also, that “ where two executions were levied before the policy took effect, and one afterwards, all of which liens lasted until the fire occurred by which plaintiff’s property was burned — helfd, that notice ought to have been given to the insurance company, and that for the want of such notice the right to recover was forfeited.”
The statement of the case (p. 152) also shows that the stipulation as to incumbrances, by express language, included judgments and liens of every description.
So in the case of Seybert v. Ins. Co., 103 Pa. St. 282, the policy provided that “ if, after insurance, the risk shall be' increased by any means whatever, or if the property * * * *448 shall be incumbered by judgment, mortgage or otherwise * * *' and the assured shall neglect or fail to give written notice thereof, and pay, etc., such insurance shall be void, and of no effeet.” It was very properly held that a judgment was an incumbrance within the meaning of the policy.
In Bowman v. Ins. Co., 40 Md. 620, the policy sued upon contained the following proviso : “ Any incumbrance on the property hereby insured, whether existing at the time of issuing this policy or imposed subsequently thereto, must be assented to by the company, otherwise the policy shall be void.” The existence of certain judgments which were liens upon the property, was not made known to the company. The court held as follows : “The judgment lien constituted an incumbrance within the meaning of the policy ; and, as the plaintiff failed to make known its existence at the time of effecting the insurance, the policy was void.” “As to what would be the effect on the policy of a judgment rendered against the insured in invitum, quaere;” upon this last proposition the judge who delivered the opinion, added:
“As to judgments in existence at the date of the policy, and such as are thereafter rendered against the insured, by his consent or confession, and which constitute liens on the property insured, we think they are clearly within the meaning of the condition.”
Some other cases bearing upon this proposition have been cited, but they are of the same general character. The Pennsylvania eases, it will be noted, do not directly meet the point. The incumbrances there in question, were either expressly, or by fair construction, within the terms of the policy. In the Maryland case, the judge delivering the opinion was in doubt as to whether or not a judgment recovered in invitum, is such an incumbrance as would invalidate the policy. In the case before us, judgments by confession were entered upon cognovit notes, executed and delivered, it would appear, in the ordinary course of business, long before the judgments were taken. Nothing in the record indicates that the assured had anything *449 to do with procuring these judgments to be entered, or that it had any actual notice or knowledge thereof before the loss occurred. Under the facts as they appear in the record, we very much doubt whether the validity of the policy was in any manner affected by the recovery of the judgments set forth therein. We think, however, that the case may be disposed of upon other grounds, which we shall now proceed to state.
2. The act of March 5, 1879, now sections 3643 and 3644 of the Revised Statutes, contains, among others, this provision: “ In the absence of any change increasing the risk without the consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurers receive a premium shall be paid, and in case of a partial loss the full amount of the partial loss shall be paid.” Sec. 3643. This statute came under review in the case of Insurance Co. v. Leslie, 47 Ohio St. 409, and was there discussed in all its beai’ings in an opinion of great ability, in which the leading authorities were referred to and examined with much care. The court held: “The statute is founded upon considerations of public policy; its purpose being, to exact diligence and care upon the part of insurance companies, to avoid improper risks and over insurance, by requiring them to cause their agents to make personal examination of the property, or full description thereof, fixing its insurable value, as well as to protect the insured against unreasonable forfeiture and defenses. The more effectually to accomplish these results, the statute holds the company liable on its policy, unless, after its issue, a change occurs, increasing the risk, without its consent, or the insured has been guilty of intentional fraud; and in case of the total loss of the property by fire, the measure of ike liability is fixed at the amount mentioned in the policy, upon which the insurer received a premium.
“The statute can not be regarded as conferring upon the insured a mere personal privilege which may be waived by agreement. It moulds the obligation of the contract into con *450 formity with its provisions, and establishes the rule and measure of the insurer’s liability. Conditions of the policy providing for a different rule or measure of liability, being in conflict with the statute, are without any binding force.”
We think the present case is governed by the principle above laid down. It is only upon the theory that the risk is increased, by suffering incumbrances to fall upon the property insured after the issue of the policy, that the defense is made available. This is very clearly shown in the opinion of the court in the case airead}' cited from 48 Pa. St. 151, where the court says: “ If property, either real or personal, is unincumbered when insured, but becomes incumbered, or is taken in execution during the life of the policy, the premium is deemed inadequate, and the company must have the opportunity of charging an additional premium, and therefore the stipulation for notice of such incumbrance or levy is a substantive and material part of the contract. It does not involve a question for the jury as to an increase of risk. The policy assumes that the risk is increased, and hence the necessity for an increase of premium. And this assumption on which the contract is based-, is justified by all experience; for incumbrances diminish the interest of the assured in the property, and levies disturb his possession, and both of these things increase the risk. The company takes insurance at less than the value of the property, that the owner may have an interest-in protecting and preserving it; may be, in effect, part insurer. But when through liens or levies the owner’s interest is extinguished or diminished, the company loses the benefit of this joint insurance, and must be compensated therefor by another premium.” (P. 157.)
But in this state the assumption of the policy of insurance that the risk is increased by the creation of incumbrances upon the property, is removed by the statute above referred to. There must be a “ change increasing the risk ” in fact, or the insurer is not relieved from liability. An incumbrance which *451 does not materially affect the risk, or substantially diminish the owner’s interest in the property, will not avail.
A. T. Brewer and G. E. Scott, attorneys for plaintiff in error.
Emery & Masters and C. Bowersox, attorneys for defendants in error.
In the present case the record does not disclose the value of the property upon which the lien of the judgments attached, nor that they were not in fact paid before the loss. The petition avers that the loss upon the building alone was $2,750, or more, and upon the machinery, etc., $7,400, or more, in all $10,150. These allegations are denied in the answer; but none of the testimony as to values is set out in the bill of exceptions ; nor does it anywhere appear what the value of the entire property, including real estate, mills and their equipment, was. Taking the averments of the answer as to the incumbrances upon the property, to be true, it still appears that there remained in the assured a large interest in the property; and we do not think it can be assumed, as a matter of law, that the recovery of the judgments set out in the answer increased the risk.
In the case of Insurance Co. v. Wells, 42 Ohio State, 519, the court appears, either to have overlooked the statute, or to have assumed that the vacating of the dwelling covered by the policy there under consideration, of necessity increased the risk. But in the case above cited from 47 Ohio State Reports, the court refer, with approval, to the case of Chamberlain v. N. H. Fire Ins. Co., 55 N. H. 249, where, under a statute of New Hampshire, a contrary doctrine was held.
Our conclusion is that the plaintiff in error was not prejudiced by the instruction complained of. The judgment of the Court of Common Pleas is therefore affirmed, with costs. No penalty, however, will be allowed.